## Pancake v. Commonwealth.

(Decided January 16, 1931.)

LINDSAY D. BRUCE and WAUGH & HOWERTON for appellant.

J. W. CAMMACK, Attorney General (HOWARD SMITH GENTRY of counsel), for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, S. J. Pancake, was indicted by the grand jury of Greenup county, charged with the offense of false swearing, which is one denounced by section 1174 of our present Statutes. At his trial thereunder he was convicted and punished by confinement for one year in the penitentiary. On this appeal by him from the verdict and judgment rendered thereon, three grounds are urged as sufficiently material and prejudicial to authorize a reversal of the judgment, and which are: (1) Insufficiency of the testimony to authorize a conviction; (2) error in the instructions, and (3) incompetent evidence introduced by the commonwealth over defendant's objections and exceptions, each of which will be disposed of in the order named.

Ground 1 requires a recitation 'of the relevant facts disclosed by the record as a basis therefor, and which will now be given. Appellant (who will hereafter be referred to as defendant) and a Mr. Canfield, as partners, contracted with a number of citizens owning abutting property, to improve and pave a street or road in the suburbs of what was formerly Chinnville, but changed now to Raceland. The work was to be paid for by the abutting property owners proportioned to the number of feet owned by each. One of such owners was the Williams Real Estate Company and its property abutted on one side of the improved way for about 900 feet; but within that distance was a small lot, the title to which was in dispute, and the company by and through its agent did not settle for the amount due the contractors assessed against it (the work having been performed in November, 1924), but withheld $98, its proportion, with the understanding that the company would at once investigate and determine the matter, but it did nothing. In 1929 the firm sued the company in the Greenup quarterly court to recover the assessment against the lot and was awarded a judgment against it for $98, with interest and costs.

At that time defendant was indebted to Mrs. Pansey R. Fullerton as administratrix of her deceased husband in a sum more than the amount of the judgment recovered by the firm in the quarterly court against the Williams Real Estate Company, and she filed an action in the same court against him on his indebtedness to her

husband, and attached the judgment that had been recovered by the firm of which defendant was a member. In that action defendant made no defense to the merits of the claim against him, but he did file a pleading, or affidavit, in which he claimed that the judgment, or in so far as his interest therein was concerned, was exempt to him under the provisions of section 1697 of our present Statutes, and in that paper, which was sworn to by him, he made this statement; "That this affiant earned no other money and received no other money within said month (November, 1924) as income from his labor and that said money now attached was earned by his actual, physical and manual labor performed in the paving of a street adjacent to the land of the Williams Real Estate Company," etc.

It was charged in the indictment that such statement was false and knowingly made and sworn to by defendant, and that, "He knew at the time he made, signed and swore to the said affidavit that he had earned and received other large sums of money during the said month of November, 1924, as income from his labor than stated in the said affidavit."

The testimony introduced at the trial, and which defendant did not deny but expressly admitted, showed without contradiction that the firm did earn and collect from the abutting property owners an amount largely in excess of the amount of the attached judgment, but that such collections were made mostly through orders given by the firm, or on its behalf, to the furnishers of material necessary to perform the work of constructing the street in accordance with the contract and were drawn on the abutting property owners as the work progressed. However, some of them paid to the firm checks during that month, but all of which were consumed in paying laborers necessary to perform the work, and the cost of construction exceeded the contract price by as much as or more than $1,500, all of which was a total loss to the firm.

Defendant and his partner made regular hands on the job, doing any kind of work that was necessary to the performance of their contract and received no wages whatever therefor. He explains in his testimony that in making his affidavit he thought he individually earned an amount as laborer, as much as $98, the amount of the attached judgment, and that with such understanding he

4

swore to the affidavit, or the pleading, upon which the prosecution is based. But, however that may be, or whatever effect his bona fide belief in that regard would have on the prosecution, we need not determine, since we have concluded that the alleged false statement which he is charged with making was literally the truth; and being so, he was not guilty of the false swearing as charged in the indictment preferred against him. It was pointed out by us in the recent case of Springfield Fire & Marine Insurance Co. v. Huntington National Bank, 229 Ky. 674, 17 S. W. (2d) 726, that partnership assets were not individual assets of the members of the firm, and that a creditor of one of the individual partners could not and did not obtain a lien upon the partnership assets by attaching them, nor was a first lien obtained against the individual partner's share by such attachment.

It was also shown in that opinion, in conformity with the universal rule upon the subject, that no creditor of one of the individual partners could subject partnership assets until the affairs of the partnership were settled and its creditors satisfied, since the latter have a superior right to appropriate partnership assets to their partnership debts over the right of an individual creditor to appropriate such assets in satisfaction of his claim against one of the partners only. The effect of that doctrine is to recognize a marked distinction and a wide separation between partnership assets and the individual assets of each separate partner, and which recognition has as permanent a place in the law as any other undisputed and well settled principle.

As a consequence thereof, Mrs. Fullerton, suing defendant to collect an individual debt of his own to her husband, was not entitled to an attachment of the funds represented by the quarterly court judgment in favor of the firm against the Williams Real Estate Company; and if the principle of law to which we have referred had been relied on in that case, her attachment would have been defeated, since the proof abundantly shows that a large amount of partnership debts are outstanding and unpaid. Whether such condition would excuse defendant's alleged false oath, if in truth it was false, we need not now determine and pass it without an expression of opinion. However, it is quite clear that when defendant stated in his affidavit or pleading containing the alleged false statement as a basis of the indictment against him

that *he* (individually) had *earned* and *received* no other money during the month of November, 1924, he told the literal truth, since he individually had received none whatever during that month. On the contrary, all of the money that had been earned or received during that month was cash or through accepted and paid orders issued by the firm to its creditors all of which was earned and received by the firm and not by defendant individually, and which latter was the substance of the statement made by him in his affidavit or pleading claiming his exemptions.

A similar variance and disparity between the averments of the indictment and the proof was involved in the recent case of Weiner v. Commonwealth, 221 Ky. 455, 298 S. W. 1075, and which we held was fatal to a conviction. Defendant in that case was prosecuted for the same offense involved in the instant indictment. He was asked while testifying in a prior case: "Did you know that a part of *your* tobacco was left in the barn when the delivery was made to the warehouse in Georgetown?" To which he answered: "I did not," and it was charged in the indictment that his answer was false within the purview of section 1174, supra, of our Statutes. The proof developed without contradiction that the tobacco referred to in the question, and with reference to which the answer thereto was made, belonged to defendant's wife and her tenant jointly and not to defendant, and we held that when the defendant answered as he did concerning any tobacco that belonged to him individually, none of which was left in the barn, his answer denying that any of *his* tobacco was so left was literally true, and that we could not conclude that he corruptly sought to evade the truth by making a literally truthful answer. In that case the record was such as to be much more persuasive of defendant's intention and purpose to defraud than is found in this record against the defendant, Pancake, whose alleged false statement is as literally true as was that made by defendant in the Weiner case. In reversing the judgment in that case, and in holding the evidence insufficient to support the conviction, we said: "For us to hold in this case that defendant's literally true answer was false, because he intended to refer to his wife's tobacco as his, could be sustained on no more substantial ground than surmise or suspicion, and we know of no rule of the criminal law that would allow us to adopt such an unwarranted construction of

the word 'your' as contained in the question propounded to him. Crimes are not created by construction having no more substantial basis than surmise or suspicion, and, whatever may be said about defendant's corrupt purpose in giving the testimony upon which the prosecution is based, we feel that we are not authorized to construe the question and the answer so as to make the latter false and to subject defendant to punishment under the statute, when in truth and in fact his testimony was not false but literally true.'' Following that opinion, the soundness of which we do not doubt, the court should have directed the jury to acquit defendant, and this ground must be sustained.

The instruction complained of in ground 2 was No. 2 given by the court, saying: ''The jury are further instructed that before they can convict the said Pancake of false swearing under the indictment on trial that his guilt must be established beyond a reasonable doubt by the testimony of two witnesses or of one witness and strong corroborating facts and circumstances, but the two witnesses, when they are required, do not have to testify to the same facts or circumstances in order to convict; and a conviction for the crime in question may be had and sustained upon documentary or written evidence alone; or by such evidence and the testimony of one witness corroborating same.''

The chief objection, as we conclude, to that instruction is to be found in this excerpt; ''But the two witnesses, when they are required, do not have to testify to the same facts or circumstances in order to convict.'' Under that language the jury could convict if only one witness testified to the *falsity* of the oath and all others testified to collateral matters having no bearing upon its falsity, the only requirement being that they appeared and testified as witnesses in the case, regardless of the subject-matter of their testimony; when the essential fact under this character of prosecution requiring corroboration in order to sustain a conviction is the *falsity* of the statement under oath and charged to have been made by defendant and upon which the indictment is based. Under the instruction as given, the jury could conclude that the required corroboration was made by a witness who testified only to some inducement fact, reputation of defendant, the administration of the oath, or other fact not bearing upon the falsity of the alleged oath, or simply because he testified to any collateral fact

at the trial of the case when, as we have seen, the corroboration must relate and be directed to the alleged falsity of defendant's oath.

Defendant's attorney as a notary public swore him to the affidavit or pleading containing the alleged false oath for which he was indicted, and it is argued under ground 3 that the attorney was incompetent to testify to that fact under the rule disqualifying attorneys from testifying to communications between them and their clients, as contained in subsection 4 of section 606 of the Civil Code of Practice. But we do not regard this argument as sound, since the oath was administered to defendant by his attorney, not in his capacity as such, but as an officer of the law vested with the right to administer oaths, and which we conclude is not protected by the rule of evidence relied on, since the oath that the attorney administered as notary public can in no sense be construed into "a communication made to him, in his professional character, by his client, or his advice thereon." See Text in 40 Cyc. p. 2365, and compare Hall v. Renfro, 3 Metc. 52, and Wicks v. Dean, 103 Ky. 69, 44 S. W. 397, 19 Ky. Law Rep. 1708.

For the reasons stated, the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial and for proceedings consistent herewith.